```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
```
**FRANKFORT**

NUVOX COMMUNICATIONS, INC.,       )
                                  )
     Plaintiff,                   )   Civil Action No. 3:05-41-JMH
                                  )
                                  )
v.                                )
                                  )
                                  )   **MEMORANDUM OPINION AND ORDER**
BELLSOUTH TELECOMMUNICATIONS,     )
INC., et al.,                     )
                                  )
     Defendants.                  )
                                  )

                     **    **    **    **    **

In this action, NuVox Communications ("NuVox") seeks review of a Kentucky Public Service Commission ("KPSC") order. This matter is before the Court on Plaintiff's motions for preliminary injunction [Record No. 3] and for summary judgment [Record No 28]. Defendants BellSouth Telecommunications ("BellSouth") and the KPSC have responded to NuVox's motion for a preliminary injunction [Record Nos. 32 & 31, respectively], and NuVox has replied [Record No. 37]. BellSouth has responded to NuVox's motion for summary judgment [Record No. 41] and NuVox has replied [Record No. 44]. Defendants' motions for summary judgment are also ripe for review. Defendant BellSouth filed a motion for summary judgment [Record No. 42], to which NuVox responded [Record No. 46]. BellSouth then filed a reply [Record No. 47]. Likewise, Defendant KPSC and Commissioner Defendants filed a motion for summary judgment [Record

No. 40], to which NuVox responded [Record No. 45].

## I. FACTUAL BACKGROUND

NuVox's predecessor, TriVergent Communications, negotiated and entered into an interconnection agreement ("the Agreement") with BellSouth on June 30, 2000.[1]  Under the Agreement, NuVox could convert higher priced equivalent circuits to lower priced Enhanced Extended Links ("EELs") if NuVox used the converted EELs to provide a significant amount of local exchange service.  The Agreement provides that BellSouth may audit these converted EELs to confirm that NuVox has complied with the local usage requirements.  The parties, however, disagree as to the prerequisites that BellSouth must satisfy before conducting such an audit.

This disagreement stems from a letter dated March 15, 2002 sent by BellSouth to NuVox informing NuVox of BellSouth's intent to conduct an audit of NuVox's converted EELs.  In the letter, BellSouth explains that the purpose of the audit is to verify NuVox's compliance with the significant local usage requirements of the FCC's Supplemental Order Clarification.  *See Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 15 F.C.C.R. 9587, ¶¶ 31-32 (2000).  NuVox challenged BellSouth's right to conduct an audit of its EELs and argued that

---

[1] BellSouth, as an incumbent local exchange carrier ("ILEC"), entered into interconnection agreements with companies like NuVox, a competitive local exchange carrier ("CLEC"), pursuant to certain sections of the Telecommunications Act of 1996.  47 U.S.C. §§ 251-61 (2000).

before BellSouth may conduct an audit, it must (1) demonstrate a concern that NuVox has not met the criteria for providing a significant amount of local exchange service and (2) hire an independent third party to conduct the audit.  NuVox contends that these two requirements were set forth in the FCC's Supplemental Order Clarification, released June 2, 2000, and, as a result, the "concern" requirement and the "independent auditor" requirement were incorporated into the Agreement.

Seeking to conduct an audit of NuVox's converted EELs, BellSouth filed a complaint with the KPSC on July 23, 2004 and filed a motion for summary disposition on September 13, 2004.  On April 15, 2005, the KPSC granted BellSouth's motion for summary disposition in part and allowed BellSouth to conduct a limited audit of NuVox's converted EELs.  In its order ("the Order"), the KPSC found (1) that BellSouth had complied with Section 10.5.4 in Attachment 2 of the Agreement and was entitled to audit NuVox's records in order to verify the type of traffic being carried over the EELs, (2) that the audit should be limited to the fifteen circuits for which BellSouth had shown sufficient concern, (3) that BellSouth had chosen an auditor who it professed was independent, and (4) that the Agreement did not provide NuVox with the right to pre-approve the auditor.  NuVox filed a petition for rehearing with the KPSC on May 9, 2005, and the petition was deemed denied through inaction.  On June 20, 2005, NuVox brought this action against

BellSouth, the KPSC, and two commissioners in their official capacities seeking declaratory and injunctive relief in response to the KPSC Order [Record No. 1].  A temporary restraining order was granted by Judge Karen K. Caldwell on July 1, 2005, enjoining the KPSC from enforcing the Order and enjoining BellSouth from conducting an audit on any of NuVox's Kentucky EELs [Record No. 18].

In its motion for preliminary injunction and its motion for summary judgment, NuVox challenges both the KPSC order and the process by which the KPSC conducted its review of this matter. Through its Order, the KPSC agreed with NuVox and found that the concern and independent auditor requirements were part of the Agreement.  The KPSC found that BellSouth met these requirements because BellSouth (1) asserted that it remained the local service provider for fifteen of NuVox's circuits, which called into question whether NuVox's EELs were compliant, and (2) professed its auditor's independence in an affidavit.  Challenging the KPSC's conclusion that BellSouth sufficiently met those requirements, NuVox argues that the KPSC misconstrued those requirements.  NuVox argues that there were material facts in dispute regarding whether BellSouth demonstrated a concern for each of the fifteen circuits it sought to audit and regarding whether BellSouth's proposed auditor was independent.  NuVox argues that the KPSC violated NuVox's due process rights by granting BellSouth's summary

disposition without providing NuVox with an opportunity to be heard. NuVox complains that the KPSC should have required BellSouth to provide evidence of its concern so that NuVox could adequately address it. Additionally, NuVox argues that by failing to provide NuVox with an opportunity to have its petition for rehearing heard, the KPSC violated its due process rights.

## II. STANDARD OF REVIEW

Plaintiff has filed a motion for preliminary injunction and a motion for summary judgment, and Defendants have filed motions for summary judgment. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court will consolidate the preliminary injunction motion with a final decision on the merits.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets this burden, the nonmoving party "cannot rest on its pleadings," but must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment, the Court must construe the facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When the Court reviews KPSC orders on the merits, the Court will review *de novo* the KPSC's interpretation of federal law and if no illegality is uncovered under such a review, the Court will use the arbitrary and capricious standard to review the KPSC's determination of issues of state law, such as the KPSC's interpretation of the language of an interconnection agreement. *Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 433 (6th Cir. 2003).

### III. DISCUSSION

**A. The KPSC's Interpretation and Enforcement of the Agreement**

First, the Court will review *de novo* the issue of whether the KPSC's order complied with requirements of the Telecommunications Act. NuVox argues that the KPSC violated 47 U.S.C. § 252(e) by improperly interpreting and enforcing the Agreement. NuVox claims that the KPSC violated § 252(e) by misconstruing the FCC's Supplemental Order Clarification. NuVox states that because the KPSC's order "renders meaningless" the concern and independent auditor requirements of the Supplemental Order Clarification, it fails to properly interpret and enforce the Agreement as required by § 252(e). NuVox argues that the KPSC erred by ordering NuVox to submit to the audit without requiring BellSouth to sufficiently comply with the concern and independent auditor requirements.

6

The KPSC contends that it is not required by the Agreement to inquire into the concern declared by BellSouth or into the independence of the auditor, and therefore, it is not required to conduct an evidentiary hearing to make those inquiries. If it were to make those inquiries and scrutinize BellSouth's stated concern, the KPSC asserts, it would effectively be conducting an audit of the circuits.

The Court finds that NuVox's argument that the Order violates federal law is without merit. NuVox has failed to point to any provision of the Agreement or the Supplemental Order Clarification that requires the KPSC to inquire further into BellSouth's stated concern or to investigate BellSouth's chosen auditor. NuVox argues that the KPSC should have required BellSouth to provide more evidence of its proffered concern and should have properly ensured that BellSouth's chosen auditor was independent, but it fails to direct the Court to any provision in the Agreement or the Supplemental Order Clarification that supports NuVox's perception of how the KPSC should have proceeded. In its Order, the KPSC determined that BellSouth had complied with Section 10.5.4 in Attachment 2 of the Agreement, had demonstrated its concern by asserting that it remained the local service provider for fifteen of NuVox's EELs, and had professed by affidavit the independence of its chosen auditor. The KPSC's conclusion that BellSouth sufficiently fulfilled the audit prerequisites was not an improper

7

interpretation of either the Agreement or the Supplemental Order Clarification, and thus, the Order does not violate § 252(e).

Because the Court finds no illegality in its review of the Order's compliance with federal law, the Court will now review whether the KPSC's interpretation of the Agreement was arbitrary and capricious. The substantive issue presented to the KPSC was whether BellSouth was entitled, under the Agreement, to audit NuVox's EELs. NuVox argues that the proceeding before the KPSC raised several disputed material facts that precluded summary disposition for BellSouth, including (1) whether BellSouth had sufficiently demonstrated a concern with respect to the circuits it wanted to audit and (2) whether BellSouth's selected auditor was independent. NuVox argues that because the KPSC "contravened" the applicable standard of review[2] by ignoring these disputed facts, the Order is arbitrary and capricious and should be set aside by this Court.

Whether BellSouth had shown sufficient concern and whether BellSouth's chosen auditor was independent were not genuine issues of material fact in the KPSC proceeding. In other words, because

---

[2] For the summary judgment standard followed by the KPSC, NuVox cites to the KPSC's decision in Order, *Ballard Rural Tel. Coop. Corp. v. Jackson Purchase Energy Corp.*, No. 2004-00036, at 7-8 (Ky. PSC Mar. 23, 2005), in which the KPSC states that it "has not established a rule that explicitly governs summary judgment; therefore . . . [it is] guided by Civil Rule 56 and the principles established by the courts resolving motions for summary judgment." In its Order, the KPSC does not refer to the standard by which it granted summary disposition to BellSouth.

the Agreement does not require the KPSC to investigate into the sufficiency of BellSouth's stated concern or into the independence of its chosen auditor in order to conclude that BellSouth is entitled to audit NuVox's EELs, NuVox's disagreement with both the sufficiency of BellSouth's concern and BellSouth's statement that its chosen auditor was independent did not preclude summary judgment for BellSouth.  The KPSC initially denied BellSouth's request to audit all 159 of NuVox's Kentucky EEL's, and per the KPSC Order, BellSouth is only allowed to audit the fifteen circuits for which BellSouth alleged that it remained the local service provider.[3]  Likewise, the KPSC explained that the Agreement allows BellSouth to select an independent auditor, and BellSouth professed its chosen auditor's independence via an affidavit.  BellSouth's contention that it remained the local service provider for fifteen of NuVox's circuits and its affidavit professing its auditor's independence provide evidence that supports the KPSC's reasoned explanation for granting summary disposition for BellSouth.

---

[3] During the hearing conducted on these motions, the parties discussed BellSouth's stated concern that it was providing local exchange service for fifteen of NuVox's circuits.  BellSouth explained that a review of its records revealed that NuVox was using fifteen EELs to serve end users who were receiving local exchange service from BellSouth.  It is the Court's understanding that the parties cannot determine whether the end users who receive local exchange service from BellSouth are the same end users who are served by NuVox's EELs without conducting an audit.

9

**B. NuVox's Due Process Rights**

NuVox contends that the KPSC violated its due process rights under the Fifth and Fourteenth Amendments of the federal constitution and Section Two of the Kentucky Constitution when the KPSC denied it an opportunity to be heard. According to NuVox, its due process rights were violated when the KPSC failed to require further evidence from BellSouth regarding the concern and independent auditor requirements — a failure, NuVox argues, that denied NuVox the opportunity to "test, explain or refute" the sufficiency of BellSouth's alleged concern or the qualifications of BellSouth's chosen auditor. *Ky. Am. Water Co. v. Commonwealth*, 847 S.W.2d 737 (Ky. 1993).

NuVox's federal constitutional claim depends on NuVox establishing that (1) it had a property right and (2) the KPSC could not deprive it of this property right without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976)).

The Court is not convinced that the KPSC violated NuVox's due

process rights. Assuming *arguendo* that NuVox has a property right in continuing to pay a lower rate for its EELs, at this stage in the litigation, the KPSC has not deprived NuVox of that or any other property right. Through its Order, the KPSC made nothing more than a preliminary determination as to whether BellSouth should be able to conduct an audit of NuVox's EELs. The fact that NuVox disagrees with the sufficiency of the evidence presented by BellSouth does not lead to the conclusion that NuVox was not afforded due process.[4] The KPSC has consistently stated that its Order does not foreclose upon NuVox's rights to challenge, after the completion of the audit, both the results of the audit and the independence of BellSouth's chosen auditor.

Section two of the Kentucky Constitution provides: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

---

[4] NuVox's situation in this case is distinguishable from that of the Attorney General and the city government in *Kentucky American Water Co. v. Commonwealth*, 847 S.W.2d 737 (Ky. 1993). In that case, the Kentucky Supreme Court found that because the KPSC staff "acted in an adverse manner" in negotiating a settlement which did not include the Attorney General or the city government, those parties "were entitled to know the factual material on which the Staff relied so that this evidence might be refuted." *Id.* at 741. In NuVox's case, it was aware of the factual material on which the KPSC relied in making its decision. Even though NuVox contends that the KPSC should have required *more* evidence from BellSouth, NuVox has not established that it was not given the opportunity to test or refute the evidence that *was* considered by the KPSC. In fact, NuVox was afforded the opportunity to fully brief the KPSC on the issues in this case and to present in writing the reasons why it believed the audit should not take place.

11

Ky. Const. § 2.  In *Kentucky Milk Marketing & Antimonopoly Comm'n v. Kroger Co.*, 691 S.W.2d 893 (Ky. 1985), the Kentucky Supreme Court, addressing Section Two, noted that "[i]f the [governmental] action taken rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship, judicial power may be interposed to protect the rights of persons adversely affected." *Id.* at 899.  As previously discussed, the Court finds that the KPSC's ruling was not arbitrary and that the Order rests upon the KPSC's reasoned determination that BellSouth had fulfilled the prerequisites for conducting an audit.  Thus, NuVox's claim under Section Two of the Kentucky Constitution is without merit.

Finally, NuVox alleges that the KPSC violated its due process rights by not providing it with a fair and meaningful opportunity to have its petition for rehearing heard.  NuVox characterizes the KPSC's actions — closing of the case before NuVox could file its petition for rehearing, failing to assign a quorum of commissioners to the case, and denying its petition based on inaction — as arbitrary and outside the scope of its authority.

The Court finds that NuVox's argument that the KPSC denied it a fair and meaningful opportunity to have its petition reviewed is without merit.  NuVox filed a petition for rehearing and that petition was denied through inaction.  This result is contemplated by KRS § 278.400, which allows the KPSC to deny a petition for rehearing by failing to act upon it.  Removing the case from its

active docket prior to receiving NuVox's petition did not affect the KPSC's power under this statute.[5] KRS § 278.080 allows the commissioners to "exercise all of the powers of the commission" in the absence of a quorum — which is exactly what the commissioner did when he failed to act upon NuVox's petition. The Court agrees with the KPSC and finds that NuVox's due process rights were not violated when the KPSC denied its petition for rehearing through inaction.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**, that Defendants' motions for summary judgment [Record Nos. 40 & 42] be, and the same hereby are, **GRANTED**, and that Plaintiff's motion for summary judgment [Record No. 28] be, and the same hereby is, **DENIED**.

This the 1st day of November, 2005.



Signed By:

*Joseph M. Hood*

United States District Judge

---

[5] *See, e.g.*, *In re Tariff Filing of Jessamine-South Elkhorn Water District*, No. 2005-00086, 2005 WL 2022857 (Ky. PSC June 13, 2005) ("Subject to the filing of a timely petition for rehearing pursuant to KRS § 278.400, these proceedings are closed.").